HENRY M. KINNE and BENJAMIN F. CARVER, Appellants, v. WILLIAM G. FORD and SAMUEL T. SUIT, Respondents.

To constitute a delivery of gold on a contract for the delivery thereof, so as to put it at the risk of the purchaser, everything must be done by the vendor that would be necessary to be done to discharge a debt, payable in gold, due from him to such purchaser. (GROVER, J.)

It is not enough that he should place it on the counter or desk, where gold was customarily placed when delivered to the purchaser, at such a time and in such a manner that the purchaser's agent might have seen and obtained possession of it; but to make a good delivery, the property must be put into the actual possession and control of the purchaser or his agent; and where the purchaser's agent is actually present at the place of delivery, it is the duty of the vendor to place the property in his "conscious" possession.

Accordingly, a deposit by the vendor (plaintiff) of a gold check upon the purchaser's (defendant's) counter, in the presence of his agent to receive such checks, but without bringing the fact of such deposit to the knowledge of such agent, is not a sufficient delivery to put the property at the risk of the purchaser; and a charge of the court to the jury that the check was to be deemed at the risk of the purchaser, if placed in the usual place of receiving such checks by him, under circumstances enabling his agent in that business to have learned, by directing his attention to the matter, that the check was there, although at the moment such agent was occupied with other business; and that it was not necessary to the delivery that the attention of the agent should be actually drawn to the check by the vendor.—*Held*, erroneous.

(Argued January 30th and decided February 3d, 1871.)

APPEAL from an order of the late General Term of the Supreme Court, in the first judicial district, reversing a judgment for the plaintiff upon the verdict of a jury, and granting a new trial.

The cause was tried before Mr. Justice SUTHERLAND and a jury, January, 1867, and a verdict rendered for the plaintiff

for $23,786, the value of a gold check for $10,000 claimed to have been delivered by the plaintiffs to the defendants on the 21st day of January, 1865. The facts are sufficiently stated in the opinion of the court.

*Edmund Randolph Robinson,* for the appellants, upon the point that there was a valid delivery of the check, cited *Lamb* v. *Lathrop* (13 Wend., 95); *Wyman* v. *Winslow* (2 Fairf., 398); *Case* v. *Green* (5 Watts, 262); and by way of analogy in common carriers' cases, *Backman* v. *Levi* (3 Campb., 414); *Packard* v. *Getman* (6 Cow., 757); 2 Kent, 604, 605; *Gibson* v. *Culver* (17 Wend., 305); *Bank* v. *Champlain Trans. Co.* (16 Verm., 62); 18 id., 131; 23 id., 176; *Merriam* v. *Hartford R. R. Co.* (20 Conn., 354); *Hotchkiss* v. *Artizans' Bank* (2 Keyes, 564).

*E. Sprout,* for the respondents.

GROVER, J. This action was brought to recover the price of $10,000 of gold, which the plaintiffs claimed they had sold and delivered to the defendants. There was no question made, upon the trial, as to the existence of a contract by which the plaintiff agreed to sell and deliver to the defendants this amount of gold at a specified price payable upon delivery to the defendants. The only question litigated was, whether the defendants had performed the contract by delivering the gold. The case shows that both parties kept offices, for the transaction of their business, in the city of New York, and were very large dealers in buying and selling gold. The office of the defendants was the proper place for the delivery of the gold. No question was made upon this point, nor but that the delivery, if made, was at the proper time. The question to be determined arises upon the charge of the judge to the jury, and the exceptions taken by the defendants' counsel to the refusal of the judge to charge as requested. To appreciate this question, it is necessary to keep in mind the testimony given upon the point to which the jury were to apply the

charge. It was proved that, by the usage, the time for the delivery of gold upon contract closed at a quarter past two o'clock P. M., and that extensive dealers like the parties were obliged, just before the expiration of the time, to make and receive deliveries with great promptness and dispatch. Mr. Carver, one of plaintiffs, testified that just before a quarter past two, upon the 20th of June, 1865, he took a gold check for $10,000, transferable by delivery, to which was pinned a statement of another transaction showing a balance due thereon, from the defendants to the plaintiffs, of fifty dollars; and took the same to the defendants' office, where he found Mr. Coddington, the defendants' agent for receiving gold deliverable to them, standing at a desk placed upon a counter by an opening through which gold to be delivered was passed to him, apparently busy with a pen; that he put the check through the opening and laid the same upon the desk or the counter by the desk, and remarked that the fifty dollars might be included in the check to be given in payment for the gold, and that he would send thereafter for the check, and, being in a hurry, went immediately out; that he was in a great hurry to make a delivery to another party, and was in the defendants' office but a very short time. Coddington, the defendants' agent, testified that he neither saw nor heard Carver, knew nothing about his leaving a check upon the desk or counter, and that in fact he never had the check. Other evidence was given tending to show that the defendants never received the check, or its proceeds. The judge charged the jury, that the question was whether Carver put or placed a gold check of $10,000 within the control or power of Mr. Coddington, in a way or manner, which, under the circumstances, should reasonably be considered as a delivery to Mr. Coddington. That he could not word the real question in the case more safely and correctly than he had done. He further charged, that the question was, whether from the evidence they believed that Mr. Carver delivered this check in such a manner, placed it in such a position that under reasonable circumstances, which included every incident connected with it, which assumes too,

that Mr. Coddington was a man of ordinary intelligence and prudence, had as good ears and eyes as other people, and which included also the custom and manner of doing this business, this ought to be considered a delivery to Mr. Coddington, if they found in fact the check was placed in the manner Mr. Carver said. The defendant's counsel requested the court to charge the jury, that the leaving of the check upon the counter or desk, without Coddington's knowledge, was not a delivery unless it was actually received by him or the defendants. In answer to this request, the court further charged that he had already said that the question was whether Carver put or placed a gold check for $10,000 within the control or power of Coddington in a way or manner, which, under the circumstances, should reasonably be considered as a delivery to Mr. Coddington, and that he would add, considering him to be a man with the ordinary sense of hearing, active in his duties, and paying ordinary attention to his business. That if the defendants put a deaf man there, or a stupid man, or any other circumstances which prevented him from paying that attention which an ordinary prudent man would, and he did not hear Mr. Carver, if he did speak to him, that was the misfortune of the defendants. That he could not, therefore, charge as the counsel requested. To this refusal the counsel for the defendant excepted. The charge as given, together with the refusal to charge as requested, considered in connection with the evidence to which it was to be applied, leaves no doubt as to what the judge held to constitute a legal delivery of gold by one party to another. The jury must have understood therefrom, that it was wholly immaterial whether the deliveree knew anything about the matter whatever; that the gold was deemed to be in his possession, and at his risk, if placed in the usual place of receiving it, under circumstances where he might have known it, if vigilantly directing his attention to what might be transacting there, although at the moment he was wholly occupied with ascertaining the correctness of, and arranging for the payment of a previous delivery. That the deliverer was under no

obligation to ascertain whether, in fact, the deliveree was so engaged, or whether he was attending to the business with him, and, consequently, knew that he placed the gold there for the purpose of transferring the possession, and, in this case, the right of property to him. These positions of the learned judge cannot be sustained. It was the duty of the plaintiffs to deliver the gold to the defendants, or their agent. A delivery by one to another is synonymous with the transfer of possession, and this is not effected by placing the property where the deliveree may, by possibility, obtain possession and control of it, but by putting it in his actual possession and control. Delivering gold upon a contract for the sale of it, is precisely analogous to the payment of a debt payable in gold. Had the plaintiffs owed the defendants a debt of $10,000, to be paid in gold, it would hardly be contended that they had paid the debt by placing the gold where the defendants usually received payments of similar debts, and that the defendants had an agent there for receiving payment of such debts, but who, by being engaged at the moment in transacting other business, knew nothing of the occurrence. In such a case there can be no doubt, that if the gold was taken by a thief before the agent had any knowledge of its being left there, the loss would fall upon the plaintiffs. It would hardly be insisted that it had been received in payment of the debt. When chattels are to be delivered at a specified time and place, the party who is to make delivery discharges his obligations by turning out the property at the specified time and place, whether his creditor is there to receive it or not. But when money is to be paid at a particular time and place by a debtor to his creditor, he cannot discharge his debt by leaving the money at the time and place in the absence of the creditor. When chattels are to be delivered, and are turned out in the absence of the creditor or party entitled to receive them, care must be taken to a reasonable extent to preserve the property from loss or destruction. If of a kind that exposure to the atmosphere would destroy, it must be placed where it will be protected

therefrom, and notice given to the owner. If consisting of gold, bullion or diamonds, it must not be left exposed to the depredation of thieves or other hazards, from which it may be protected. In the present case the agent of the defendants was at the place ready to receive the gold, and it was the duty of the plaintiffs to place it in his conscious possession, and not to abandon it without any protection to the danger of being stolen, which, assuming the testimony upon both sides to be true, was the actual cause of the loss. The defendants ought not to be made responsible for a delivery to their agent until he was actually notified that the property was placed in his charge and made aware of where it was, and thus enabled immediately to take the necessary care for the preservation of property of such value as the check. To have such a check exposed to robbers for a moment would be gross negligence, and it was the duty of Carver to protect it until he knew that Coddington was aware of the design to place it in his possession. There is no difficulty in making rapid deliveries under this rule. Upon that assumed by the judge, it would never be safe for the person receiving gold to devote an instant's time to the examination of the gold or checks received, for while so engaged gold might be placed by others upon the desk or counter, and left at his risk wholly unprotected. The only safe rule as to what shall constitute a delivery applicable to gold, etc., is that derived from the analogy of paying a debt by a debtor to his creditor, and it is clear that this can only be done when the creditor consciously assents to a receipt of the money for the purpose for which it is offered to him. The General Term were right in reversing the judgment rendered for the plaintiffs and directing a new trial, and their order must be affirmed and judgment absolute given the plaintiffs upon the stipulation.

All the judges concurring but ALLEN, J., who, having been of counsel, did not sit; and RAPALLO, J., who dissented.

Order affirmed and judgment absolute for the defendants.